Michael A. Romero, Pro Se
#406255/SBI#875262 B
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

RECEIVED

DEC 19 2013

AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL A. ROMERO ) | Civil Action Pursuant to 42 U.S.C. § 1983 |
| Plaintiff, ) | |
| vs. ) | Case No. _____ |
| ABU AHSAN, and ROBIN GEHRMANN, sue ) in their individual and official | Judge: _____ |
| capacities. ) | Magistrate: _____ |
| Defendants. ) | |

JURY TRIAL DEMANDED

VERIFIED COMPLAINT FOR MONETARY DAMAGES
AND INJUNCTION

I. INTRODUCTION

Plaintiff files this 42 U.S.C. § 1983 lawsuit because defendants Abu Ahsan and Robin Gehrmann deliberately prevented the plaintiff from receiving a much needed reconstructive knee surgery prescribed by a specialist, and purposely delay providing a prescribed knee brace, as retaliation because plaintiff filed grievances against them thus violating plaintiff's First and Eighth Amendments Rights to the United States Constitution.

II. JURISDICTION

1a. Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983. This Court has jurisdiction under 28 U.S.C. Sections 1331 and 1343. Plaintiff also seeks a declaratory judgment

pursuant to 28 U.S.C. § 2201.

1b. Plaintiff is a convicted and sentenced state prisoner. Plaintiff is confined at the New Jersey State Prison located in Trenton, New Jersey.

1c. Plaintiff had filed a previous federal lawsuit in the past unrelated to this case.

### III. VENUE

2. The District Court of New Jersey is appropriate venue under 28 U.S.C. § 1391 (b)(2) because the events or omissions giving rise to the claims occurred in this district.

### IV. PARTIES

3. Plaintiff Michael A. Romero was at all times relevant to this action a prisoner incarcerated at the New Jersey State Prison, which is located in the District of New Jersey.

4. Defendant Abu Ahsan is at all times a doctor at the New Jersey State Prison and relevant to the events described herein. The defendant have acted and continue to act under color of state law. He is sued in his individual and official capacities.

5. Defendant Robin Gehrmann is at all times an orthopedist for the UMDNJ and relevant to the events described herein. The defendant have acted and continue to act under the color of state law. He is sued in his official and individual capacities.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. The plaintiff exhausted all available administrative remedies.

## VI. FACTUAL ALLEGATIONS

7. On December 28, 2011, while playing basketball in the prison yard plaintiff jumped for a rebound and his right leg landed on a cement crack which forced his right knee to make an abrupt turn. Plaintiff fell to the ground experiencing severe pain in his right leg. Plaintiff's right leg was unstable and he was unable to walk, thus a code 53 (emergency medical code) was called.

8. Plaintiff was transported to the prison clinic on a wheelchair. A physical examination was performed and plaintiff was told "something is broken in your right knee," and admitted into the prison infirmary.

9. On December 29, 2011, at the prison infirmary, plaintiff was examined by an orthopedist named Ahmar Shakir. The orthopedist told the plaintiff "your right knee is in very bad shape and most likely will need to be surgically repaired, please do not move it or force it." And recommended an immobilizer, an MRI, and follow up.

10. On January 3, 2012, defendant Ahsan went to the prison infirmary and examined plaintiff's right knee. And told him that he needed to walk so the knee could get stronger; therefore, directed him to stand up and walk. Plaintiff informed defendant Ahsan that he could not walk because his right knee was very unstable and in severe pain, and orthopedist Shakir had ordered

him not to force it. Defendant Ahsan persisted, and plaintiff tried to walk but could not. During the next two days defendant Ahsan kept directing the plaintiff to walk although knowing that he was in severe pain, and that orthopedist Shakir had ordered him not to force the knee. Plaintiff forced himself to comply with defendant Ahsan's orders but failed, and suffered deeply while trying.

11. On January 6, 2012, once again, defendant Ahsan directed the plaintiff to "stand up and walk." The plaintiff pleaded with him, but defendant Ahsan kept persisting. Plaintiff refused and defendant Ahsan mumbled something and left. Plaintiff filed a remedy form (grievance) against defendant Ahsan.

12. On January 7, 2012, defendant Ahsan returned stating "ok, lets try this again, stand up and walk." Plaintiff refused and advised him that he had filed a remedy form against him. Defendant Ahsan gave him a dirty look and left. Defendant Ahsan returned on January 10, 2012 examined plaintiff's right knee and left without saying a word.

13. The next day, plaintiff was taken to Saint Francis Medical Center for the MRI recommended by orthopedist Shakir. **The findings were:** Nonvisualization of the majority of ACL is consistent with a complete ACL tear. The iliotibial band insertion is not identified, and therefore appears torn. Insertion of bicepts femoris on fibular head is poorly identified. Fibular collateral ligament is also poorly visualized. Overall findings are suspicious for extensive tearing of lateral stabilizing structures. There is extensive ill-defined

soft tissue signal abnormality throughout this region. There is signal abnormality along the ventral medial femoral condyle and posterior medial tibial plateau, consisting with kissing contusions. There are additional regions of mild post-traumatic marrow signal abnormality. Body and posterior horn of medial meniscus appears torn.

14. On January 12, 2012, defendant Ahsan discussed the MRI result with orthopedist surgeon, Shakir; and the prescribed treatment was a hinged knee brace and scheduled for surgery repair.

15. On January 13, 2012, nurse Carol Milroy entered plaintiff's room with a printout in her hands and informed him that indeed he needed knee surgery. Some time later defendant Ahsan appeared and also told the plaintiff that he needed knee surgery. Plaintiff asked him when the surgery would be performed, and defendant Ahsan answered "patients that file remedy forms do not receive surgeries in my prison." Plaintiff told defendant Ahsan that he could not do that, and defendant Ahsan smiled and said: "I can do anything I want, I am not the prisoner here." Plaintiff filed another grievance against defendant Ahsan.

16. From January 17 through January 25, 2012 plaintiff tried to speak with defendant Ahsan to reason with him, but he just ignored plaintiff's efforts to converse.

17. On January 26, 2012, plaintiff saw orthopedist Shakir who advised the plaintiff of the MRI result, that he needed full reconstruction of his right knee, and that he was going

to refer him to an orthopedist from the UMDNJ who will perform the surgery. In fact, Dr. Shakir wrote "The patient requires full reconstruction of his knee. ACL and PCL reconstruction is recommended. The patient understands all this. He should be followed by a tertiary care center with multiple ligament surgery. Follow up is recommended with me now on p.r.n. basis." That same day, defendant Ahsan told the plaintiff that regardless of orthopedist Shakir's recommendations he will not get the surgery, and discharged him from the prison infirmary to the general population. But plaintiff injuries are so severe that he had to be re-admitted immediately to the prison infirmary.

18. On February 13, 2012, plaintiff was taken to see the UMDNJ orthopedist who was supposed to performed the surgery, defendant Gehrmann. Defendant Gehrmann told the plaintiff that in fact he needed surgery but things were more complicated than that, but not to worry because his injuries would still be treated in other ways. Defendant Gehrmann also tried to convince the plaintiff that complaining against defendant Ahsan was an exaggerated response because he meant well and is a good doctor.

19. On February 14, 2012, plaintiff saw defendant Ahsan who commented "I told you, complaining equals no surgery, you just learned a valuable lesson." And the next day, plaintiff was discharged from the prison infirmary confined to a wheelchair and placed in the prison medical unit. (2-C unit).

20. On February 16, 2012, plaintiff filed a grievance against both defendants; and on February 17, 2012 plaintiff sent a letter to Ms. Kathy Trillo (Medical Department Manager)

complaining about the defendants' retaliatory tactics and their refusal to allow him to have surgery. The defendants continued to deny plaintiff's reconstructive surgery to punish him for having filed grievances, and not for medical reasons, and instead scheduled the plaintiff to receive physical therapy.

21. Plaintiff started the physical therapy on or about March 14, 2012, and on March 21 2012 Mr. Charles Miller (the physical therapist) suggested a follow up with the orthopedist for surgery. Consequently, on March 27, 2012 plaintiff was taken to see defendant Gehrmann who told the plaintiff "make the best out of the physical therapy because you will not be operated, and be grateful that at least you are getting physical therapy."

22. Throughout the duration of the physical therapy, the therapist persisted to obtain the hinged brace and surgery for the plaintiff, but his efforts were deliberately disregarded by the defendants. Then on May 11, 2012 the physical therapist discharged the plaintiff affirming that he needed surgery.

23. On June 12, 2012, almost six months after his injuries, plaintiff was given a hinged knee brace that does not help much. The defendants did not provide the brace earlier to keep the plaintiff confined to the wheelchair longer and prolong his pain and suffering, because he filed grievances against them, and to deter him and others from filing grievances.

24. Plaintiff personally informed both defendants that the physical therapy and hinged knee brace did not help, and he continued to suffer from severe pain and loss of function.

Still defendants Ahsan and Gehrmann refused, and kept refusing to allow the plaintiff to have surgery as retaliation because plaintiff filed grievances against them, and to deter him and others from filing grievances.

25. Since injured, plaintiff has been suffering from consistent severe pain. The pain medication provides very little relief, almost none. Plaintiff has a hard and painful time standing up, and cannot walk properly. In fact, on June 18, 2013 plaintiff fell in the shower and re-injured his knee even though he had the hinged brace on. He cannot climb stairs. His sleep has been affected, for every time he turns his painful knee wakes him up. And he can no longer play sports. Meanwhile, the defendants keep deliberately ignoring plaintiff's pain and suffering and his pleadings for help.

26. Accordingly, as a result of the defendants' retaliation plaintiff had suffered and continues to suffer from excruciating pain, impairment of daily activities, atrophy, loss of function, and mental distress.

## VII. CLAIMS FOR RELIEF

### A. Deliberate Indifference to Medical Needs

27. Plaintiff repeats and incorporates herein by reference each and every allegation in paragraphs 1 through 26 as though fully set forth herein.

28. The defendants' knowledge of plaintiff's injuries, pain, and suffering; and their intentional refusal to provide a prescribed, much needed reconstructive surgery in order to punish the plaintiff constitutes a violation of the Eighth

Amendment to the United States Constitution.

29. The defendants deliberate delayed in providing a hinged knee brace to prolong plaintiff's pain and suffering violates the Eighth Amendment to the United States Constitution because plaintiff filed grievances against them.

30. The refusal of defendants Ahsan and Gehrmann to properly treat plaintiff's injuries, after having confirmation of the injuries and the treatment needed, constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment.

31. The failure of defendants Ahsan and Gehrmann to take steps to ensure that plaintiff receives the needed surgery, despite their knowledge of the specialist recommendations, constitutes deliberate indifference to plaintiff's serious medical needs.

32. Defendants Ahsan and Gehrmann malicious and purposeful intervention with the prescription of plaintiff's surgery constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment.

33. As a result of defendants Ahsan and Gehrmann malicious and deliberate intervention with the prescription of plaintiff's surgery, plaintiff was deprived of relief and is suffering unnecessary pain and mental distress in violation of the Eighth Amendment to the United States Constitution.

B. Retaliation

34. Plaintiff repeats and incorporates herein by reference each and every allegation in paragraphs 1 through 33 as though

fully set forth herein.

35. The refusal of defendants Ahsan and Gehrmann to provide knee surgery to plaintiff's confirmed injuries as a result of plaintiff's having filed grievances constitutes retaliation for petitioning the government for redress of grievances and therefore violate the First Amendment to the United States Constitution.

36. Defendants Ahsan and Gehrmann's malicious and intentional intervention of plaintiff's prescribed surgery as a result of plaintiff having filed grievances against them constitutes retaliation for petitioning the government for redress of grievances and therefore violates the First Amendment.

37. Defendants Ahsan and Gehrmann's malicious and intentional delay in providing a hinged knee brace as a result of plaintiff having filed grievances against them constitutes retaliation for petitioning the government for redress of grievances and therefore violates the First Amendment.

38. As a result of the defendants' retaliation, plaintiff had suffered and continues to suffer from excruciating pain, impairment of daily activities, atrophy, loss of function, and mental distress.

### VIII. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

**A.** Issue a declaratory judgment stating that:
1. Defendants Ahsan and Gehrmann's intentional refusal to treat plaintiff's injuries with needed surgery violates plaintiff's

rights under the Eighth Amendment to the United States Constitution.

2. Defendants Ahsan and Gehrmann's intentional delay to provide the plaintiff with a hinged knee brace violates plaintiff's rights under the Eighth Amendment to the United States Constitution.

3. Defendants Ahsan and Gehrmann violated plaintiff's First Amendment Right not to be retaliated against for filing grievances.

4. Defendants Ahsan and Gehrmann violated plaintiff's First Amendment Right not to be retaliated against to be deterred from seeking redress.

5. Defendants Ahsan and Gehrmann failure to provide adequate medical care for plaintiff confirmed injuries violated the plaintiff's rights under the Eighth Amendment to the United States Constitution.

6. Defendants Ahsan and Gehrmann's malicious intervention of plaintiff's prescribed surgery violates the plaintiff's rights under the Eighth Amendment to the United States Constitution.

   **B.** Issue an injunction ordering the defendants to:
1. Immediately arrange for the plaintiff to receive reconstructive knee surgery, and rehabilitation thereafter.
2. Refrain from further and future retaliation against the plaintiff in any shape, manner, or form.

   **C.** Order Defendants to pay compensatory, nominal and punitive damages;

   **D.** Order Defendants to pay reasonable attorney fees and

costs; and

E. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Michael A. Romero
Michael A. Romero, Pro Se

Dated: Dec 17, 2013

Pursuant to 28 U.S.C. § 1746, I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on _____

/s/ Michael A. Romero
MICHAEL A. ROMERO
Plaintiff, Pro Se