***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
MICHAEL ROMERO, :
:
    Plaintiff, :
: Civ. Action No.: 13-7695 (FLW)(DEA)
v. :
: **OPINION**
ABU AHSAN, and ROBIN :
GEHRMANN, in their individual and :
official capacities, :
:
    Defendants. :
_____:

**WOLFSON**, **United States District Judge:**

    Plaintiff Michael Romero ("Plaintiff"), a prisoner housed in the New Jersey State Prison ("NJSP" or the "Prison"), filed this action against defendants Dr. Abu Ahsan ("Defendant" or "Dr. Ahsan") and Dr. Robin Gehrmann[1] for violations of 42 U.S.C. § 1983. Specifically, Plaintiff asserts that: (i) his Eight Amendment rights were violated by Defendant's deliberate indifference to Plaintiff's knee injury sustained while playing basketball; and (ii) his First Amendment rights were violated because Defendant retaliated against Plaintiff for complaining about Dr. Ahsan's failure to provide what Plaintiff perceives as adequate and necessary medical care.

    Presently before the Court is Dr. Ahsan's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Defendant contends, *inter alia*, that Plaintiff failed to exhaust his administrative remedies with respect to the claims that gave rise to the instant action. As

---

[1] Dr. Gehrmann was a defendant in this matter. On December 28, 2015, however, Plaintiff submitted a stipulation of dismissal with prejudice as to that defendant. Dr. Ahsan is the only remaining defendant.

1

discussed *infra*, because there are issues of fact as to whether Plaintiff exhausted his administrative remedies, pursuant to the Prison Litigation Reform Act ("PLRA"), an evidentiary hearing shall be held by this Court to make such a determination. Pending such a hearing, the Court will defer ruling on Defendant's arguments on the merits.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  NJSP Procedures to File a Grievance

NJSP has a formalized review process for use by prisoners in making requests and submitting grievances known as the Inmate Remedy Form System ("IRF System").[2] Margaret Reed, the Acting Statewide Medical Patient Advocate at Rutgers University, who oversaw the grievance process, explained:

> My general understanding is an inmate can fill out a grievance form if they have a complaint about anything. There is a box -- boxes throughout each institution. And that's only for grievances. He can or she can put the grievance form in the box.
>
> The [NJDOC] grievance coordinator picks the grievances out of the box every day and reads them, date[] stamps them, assigns them a reference number, and she or he then distribute[s] them to the people to whom they pertain.
>
> So if it has to do with medical care, she gives them to the person in the medical department who's in charge of grievances. They answer it. They give the forms back to the grievance coordinator to log – and she logs in the response.
>
> It gets reviewed to see if the response is acceptable. And once it's signed off on, it gets returned to the inmate.

Raymond-Flood Suppl. Decl., Ex. A, Reed Deposition ("Reed Dep.") at 11:23-12:22; *see* N.J.S.A. 10A:1-4.1 to -4.9 (setting forth the NJDOC grievance procedure for New Jersey state prisoners). The IRF System is also outlined in the NJSP Inmate's Handbook. *See* Aggarwal Decl., Ex. A, NJSP Inmate's Handbook at pgs. 95-98.

---

[2] As discussed, *infra*, Plaintiff concedes that the IRF System existed at NJSP at all relevant times.

Generally, a prisoner must fill out an "Inmate Request System and Remedy Form" setting forth his or her problems or complaints. *Id.* at 96, ¶ 1. Once the form is completed, the prisoner must place the grievance form into the proper collection box marked "INMATE REQUEST FORMS," which are located in each unit. *Id.* at pg. 97, ¶ 8. Each day, a prison official retrieves the grievance forms from the collection boxes. *Id.* As long as the form is properly filed, it will be processed within thirty (30) working days, unless the request coordinator considers such request to be urgent. *Id.* at pg. 97, ¶ 9. A prisoner is prohibited from submitting additional forms addressing the same problems or concerns within that thirty (30) day period. *Id.* With respect to the appeal process, a prisoner is permitted to appeal a staff response to his grievance form, and an administrator will render a final decision, which completes the appeal process at the institutional level. *Id.* at pg. 98, ¶¶ 1, 4-5.

## II.     Plaintiff's Injuries and Treatment[3]

On December 28, 2011, Plaintiff sustained an injury to his right knee while playing basketball in the prison courtyard. *See* DSUMF at ¶¶ 1-2. After the incident, Plaintiff was transported to the prison medical clinic, where he was examined by Defendant, the Medical Director at NJSP. *Id.* at ¶¶ 3, 5. At the conclusion of the examination, Defendant noted that Plaintiff had mild swelling and limited range of motion of the right knee, and he prescribed Tylenol with codeine and recommended crutches. *Id.* at ¶ 5. Because of his injuries, Defendant admitted Plaintiff to the infirmary. *Id.*

On December 29, 2011, Defendant again examined Plaintiff, finding that Plaintiff sustained an acute knee sprain with a potential ligamentous injury. *Id.* at ¶ 7. Based on his

---

[3]     The Court recounts only the undisputed facts necessary to resolve the issues relating to Defendant's exhaustion defense.

diagnosis, Defendant ordered an MRI and a knee immobilizer for Plaintiff, *see id.* at ¶ 8, and the doctor recommended that Plaintiff continue his care at the infirmary, which included range of motion exercises and "weight bearing as tolerated." *Id.* at ¶ 9. While Plaintiff could not provide a definitive date, he testified that he was also evaluated by Dr. Ahmar Shakir ("Dr. Shakir"), an orthopedist, shortly after his injury. *See* Aggarwal Decl., Ex. C, Plaintiff's Deposition ("Pl's Dep.") at 20:18-21:1. Plaintiff further testified that Dr. Shakir told Plaintiff that Plaintiff might have sustained a tear to his ACL, and that he should not place weight on his right knee. *Id.* at 21:2-17.

On January 3, 2012, Defendant examined Plaintiff again. *Id.* at 13. Plaintiff testified that, at this examination, Defendant told Plaintiff to put weight on his right knee, but Plaintiff refused to do so and threatened to file a grievance against Defendant. *See* Pl's Dep. at 26:15-25; 30:7-11. On January 6, 2012, Plaintiff allegedly filed his first grievance against Defendant, which stated that Defendant "keeps directing me to walk every time he comes to check on me at the infirmary," even though Dr. Shakir recommended that Plaintiff not place weight on his right knee.[4] *See* Aggarwal Decl., Ex. H, Plaintiff's Inmate Remedy System Form ("Pl.'s First Grievance"), dated January 6, 2012; *see also* Pl.'s Dep. at 85:22-87:12. On that form, Plaintiff accused Defendant of violating Plaintiff's state and federal constitutional rights. *Id.*

On January 11, 2012, Plaintiff went to Saint Francis Medical Center for an MRI, which demonstrated "[s]evere apparent posttraumatic findings including complete ACL tear, kissing medial compartment contusions, as well as severe disruption of lateral stabilizing structures." DSUMF at ¶ 15. The following day, Defendant ordered that Plaintiff attend an orthopedic

---

[4] Plaintiff states he made copies of all grievances that he purportedly submitted. *See* Pl.'s Dep. at 29:9-23.

4

consultation, *see id.* at ¶ 17, and noted in the medical records: "Needs ortho follow-up ASAP for likely surgery." *See* Raymond-Flood Decl., Ex. A, D0511-D0512. Three days later, Plaintiff allegedly filed his second grievance against Defendant. *See* Aggarwal Decl., Ex. I, Plaintiff's Inmate Remedy System Form ("Pl.'s Second Grievance"), dated January 14, 2012; *see also* Pl.'s Dep. at 85:22-87:12. In that grievance, Plaintiff stated that while Defendant informed Plaintiff that he would need reconstructive surgery on his right knee, Defendant also stressed that "patients who file remedy forms do not receive surgeries." *Id.* Plaintiff further stated on the form that Defendant was retaliating against him because of his prior grievance filed against Dr. Ahsan. *Id.* Plaintiff once again reiterated that Defendant was violating his state and federal constitutional rights. *Id.*

On January 26, 2012, Plaintiff visited Dr. Shakir for an orthopedic consultation, and Dr. Shakir recommended that Plaintiff undergo reconstructive surgery on his right knee. DSUMF at ¶¶ 24-25. Based on that recommendation, Defendant scheduled Plaintiff for an orthopedic evaluation at the University of Medicine and Dentistry of New Jersey ("UMDNJ"). *Id.* at ¶ 26. On February 9, 2012, Plaintiff was examined by Dr. Gehrmann, an orthopedic surgeon, who recommended that Plaintiff wear a hinged knee brace, and that he continue to perform range of motion exercises. *Id.* at ¶¶ 27-28. Dr. Gehrmann also recommended that Plaintiff start physical therapy for six weeks. *Id.* Shortly after that consultation, Plaintiff allegedly sent a letter to Kathy Trillo ("Trillo"), the Nurse Manager at NJSP, stating that "[a] specialist has prescribed a hinged knee brace and surgery for my right knee. Yet Dr. Ahsan and Dr. Gehrmann have not provided me with the brace and are refusing to allow me to have surgery because I filed remedy forms." *See* Aggarwal Decl., Ex. J, Plaintiff's Letter to Trillo ("Pl.'s Letter to Trillo"), dated February 12, 2012. Plaintiff then requested Trillo's intervention, since he was suffering from severe pain. *Id.*

On February 16, 2012, Plaintiff allegedly filed his third grievance against Defendant and Dr. Gehrmann, for purportedly retaliating against Plaintiff "by refusing to provide [him] with a knee surgery, prescribed by Dr. Shakir, because . . . remedy forms [were filed] against Dr. Ahsan." *See* Aggarwal Decl., Ex. J, Plaintiff's Inmate Remedy System Form ("Pl.'s Third Grievance"), dated February 16, 2012; *see also* Pl.'s Dep. at 85:22-87:12. Plaintiff again reiterated that Defendant and Dr. Gehrmann were violating his constitutional rights. *See id.* Several months later, Plaintiff filed his forth grievance on May 20, 2012. *See* Aggarwal Decl., Ex. J, Plaintiff's Inmate Remedy System Form ("Pl.'s Fourth Grievance"), dated May 20, 2012; *see also* Pl.'s Dep. at 85:22-87:12. Specifically, on that form, Plaintiff stated that "Dr. Ahsan and Dr. Gehrmann are maliciously delaying the [hinged knee] brace, and refusing to allow me to have surgery, to keep me in the wheelchair and prolong my pain as punishment because I filed remedy forms." *Id.* Plaintiff also complained, for the first time, that prison officials had not responded to his prior three grievances. *Id.*

On June 12, 2012, Plaintiff was fitted for his hinged brace. *See* DSUMF at ¶ 33. Later that same month, Plaintiff visited Dr. Gehrmann at UMDNJ, who recommended that Plaintiff should continue his non-operative treatments, including wearing the hinged brace. *Id.* at 34. Indeed, Dr. Gehrmann noted that Plaintiff's range of motion had improved dramatically. *Id.* On March 12, 2013, Plaintiff visited Dr. Gehrmann for a follow-up appointment. *Id.* at ¶ 35. At that appointment, Dr. Gehrmann allegedly told Plaintiff that he was "not a good operative candidate" because he cannot perform the all of the rehabilitation requirements at NJSP. *Id.* at ¶¶ 35-36; *see* Raymond-Flood Declaration, Ex. A, D1212-D1213. Dr. Gehrmann advised Plaintiff that "he could actually end up with worse outcomes if he had surgery and then did not have the specific rehab required." *Id.*

6

On May 2, 2013, Plaintiff reinjured his right knee when he slipped and fell in the shower. DSUMF at ¶ 37. An x-ray revealed mild osteoarthritis in Plaintiff's right knee. *Id.* at ¶ 38. On July 1, 2013, Defendant examined Plaintiff, and the doctor recommended that Plaintiff continue to use the hinged knee brace. *Id.* at ¶ 39. Thereafter, on September 24, 2013, Plaintiff allegedly filed his fifth and final grievance in connection with the treatment of his knee injuries. *See* Aggarwal Decl., Ex. J, Plaintiff's Inmate Remedy System Form ("Pl.'s Fifth Grievance"), dated September 24, 2013; *see also* Pl.'s Dep. at 85:22-87:12. In his that grievance, Plaintiff stated that "Dr. Ahsan and Dr. Gehrmann keep refusing to allow me to have knee surgery, which was prescribed by orthopedist surgeon Shakir in January 2012," even though Defendant and Dr. Gehrmann knew "that the physical therapy, pain medication, and hinged knee brace have not helped with my extreme pain and that I'm losing function of my right knee." *Id.* Plaintiff further noted: "They are doing this to castigate me because I filed remedy forms. If I don't receive assistance to resolve this matter soon, I'll be forced to seek legal help." *Id.* Approximately one year after Plaintiff allegedly submitted his fifth grievance, on October 22, 2014, Dr. Mark Pollard, an orthopedic surgeon at Cooper University Hospital, performed surgery on Plaintiff's right knee to repair his torn ACL. *See* DSUMF at ¶ 50.

In total, Plaintiff testified that he placed five grievances into the proper collection box, and that he never received confirmation that his grievances were collected by prison officials at NJSP. *See* Pl.'s Dep. at 85:22-87:12. Plaintiff further testified that none of his five grievances were ever returned to him. *Id.* To the contrary, Defendant testified that he had no knowledge of Plaintiff filing any grievances against him. *See* Raymond-Flood Decl., Ex. C, Defendant's Deposition ("Def.'s Dep.") at 99:11-17. Defendant also denied that he told Plaintiff that patients who file grievances do not receive surgeries. *Id.* at 100:2-5. In addition, Defendant has submitted the

7

declaration of Ms. Reed, who performed a search of the New Jersey Department of Corrections ("NJDOC") database, and certified that the search revealed that Plaintiff did not submit any medical remedy forms in 2012.  *See* Reed Decl. at ¶¶ 5-6.  Likewise, Jessica Smith ("Smith"), an Executive Assistance at the New Jersey State Prison – Division of Operations, advised Plaintiff's counsel that that "a review of our Inmate Remedy System shows that inmate Romero filed 6 grievances and none of the grievances were filed against Dr. Abu Ahsan."  *See* Aggarwal Decl., Ex. L, Smith Letter to Aggarwal, dated January 13, 2016.

**III.   Procedural History**

On December 19, 2013, Plaintiff, proceeding *pro se*, sought to file his Complaint without the payment of fees, pursuant to 28 U.S.C. § 1915.  After the Court found that Plaintiff was qualified for *in forma pauperis* status, the Complaint was filed on January 13, 2014.  See Order dated January 13, 2014.  Plaintiff asserts the following claims against individual defendants: (i) Count One – violation of the Eighth Amendment for deliberate indifference to medical need; and (ii) Count Two – violation of the First Amendment for retaliating against Plaintiff for complaining about the lack of medical treatment.  In addition to his Complaint, Plaintiff also filed a motion for preliminary injunction, which was opposed by Defendant.  On August 20, 2014, this Court denied Plaintiff's motion for preliminary injunction, concluding that Plaintiff failed to show that he was suffering irreparable harm by delaying medical treatment.  See Letter Order dated August 20, 2014.

On May 13, 2015, Plaintiff filed a motion to appoint *pro bono* counsel, which was subsequently denied by the Magistrate Judge.  See Order dated June 17, 2015.  Plaintiff then filed an appeal of that decision to this Court.  On September 16, 2015, this Court issued an Opinion, and a corresponding Order, finding that the Magistrate Judge's decision warranted reversal and directing the appointment of *pro bono* counsel for Plaintiff.  See Opinion and Order dated

September 16, 2015. On October 23, 2015, the Magistrate Judge appointed Surinder K. Aggarwal, Esq., to represent Plaintiff. Order dated October 23, 2015. Shortly thereafter, Plaintiff's counsel submitted a signed stipulation dismissing defendant Dr. Robin Gehrmann with prejudice. The only remaining defendant is Dr. Ahsan. Finally, on May 9, 2016, Defendant filed the instant motion for summary judgment, which is opposed by Plaintiff.

## DISCUSSION

### I.     Standard of Review

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor .'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 447 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex*, 477 U.S. at 330. "A nonmoving party has created a genuine issue

of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg.*, Inc., 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under *Anderson*, Plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations omitted); *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokle*y, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

**II.     Failure to Exhaust Administrative Remedies**

Defendant moves for summary judgment on the basis of Plaintiff's failure to exhaust his administrative remedies with respect to his Eighth Amendment deliberate indifference and First

Amendment retaliation claims. Specifically, Defendant contends that there is no evidence in the record that Plaintiff submitted his deliberate indifference and retaliation claims through the established grievance procedure of the New Jersey Department of Corrections ("NJDOC") — the IRF System — before filing suit in this Court, and, therefore, Plaintiff's claims are barred. On that point, Plaintiff does not dispute that NJSP had established the IRF System as its administrative grievance procedure, nor does Plaintiff challenge the constitutionality of the IRF System. Rather, Plaintiff asks the Court to find that those remedies were "unavailable" to Plaintiff in this specific case due to the Prison's failure to respond to Plaintiff's grievance complaints.

The PLRA provides that "'[n]o action shall be brought with respect to prison conditions ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013) *cert. denied*, 134 S. Ct. 1547 (2014) (citing 42 U.S.C. § 1997e(a)); *see Ross v. Blake*, 136 S. Ct. 1850, 1856 (reconfirming that there is no question that exhaustion is mandatory under the PLRA). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Coulston v. Glunt*, No. 16-2980, 2016 U.S. App. LEXIS 19710, at *9-10 (3d Cir. Nov. 2, 2016) ("The District Court properly dismissed Coulston's retaliation claim for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a)."). There is no futility exception to the exhaustion requirement. *See Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000). "The PRLA does not require exhaustion of all remedies. Rather, it requires exhaustion of such administrative remedies 'as are available.'" *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (citing 42 U.S.C. § 1997e(a)); *Camp v. Brennan,* 219 F.3d 279, 281 (3d Cir. 2000)). "The availability of administrative remedies to a prisoner is a

11

question of law." *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (quoting *Ray v. Kertes*, 285 F.3d 287, 291 (3d Cir. 2002).

Failure to exhaust administrative remedies is an affirmative defense that defendants bear the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). "Furthermore, the defendant must prove that the prisoner-plaintiff failed to exhaust each of his claims. There is no "total exhaustion" rule permitting dismissal of an entire action because of one unexhausted claim." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013) (citing *Jones*, 549 U.S. at 220–24).

In addition, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts. *Small*, 728 F.3d at 269 (citing *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008) and *Drippe v. Gototweski*, 604 F.3d 778, 781 (3d Cir. 2011)). As such, "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Id.* at 271; *see also Messa v. Goord*, 652 F.3d 305, 308–09 (2d Cir. 2011); *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010); *Pavey*, 544 F.3d at 742; *Bryant v. Rich*, 530 F.3d 1368, 1373–75 (11th Cir. 2008); *Wyatt v. Terhune*, 315 F.3d 1108, 1119–20 (9th Cir. 2003).

Here, Plaintiff's claims are clearly governed by the PLRA; there is no dispute that Plaintiff's place of confinement had an established administrative grievance procedure, the IRF System, in place at the time when Plaintiff's claims allegedly accrued, and that Plaintiff's claims undoubtedly seek to challenge the conditions of his confinement, namely his treatment by the Prison's medical personnel. Under the PLRA, therefore, Plaintiff was required to exhaust administrative remedies before bringing suit before this Court. *See* 42 U.S.C. § 1997e(a). As discussed above, however, the PLRA only requires a plaintiff to exhaust those administrative remedies "available" to him or her at the time a claim accrues. *See, e.g.*, *Brown*, 312 F.3d at 111.

As noted, Plaintiff concedes that he did not exhaust his administrative remedies through the applicable procedure.[5] Indeed, the record reflects that the IRF System requires the completion of four distinct steps: (i) the submission of the inmate's complaint, using the "Inmate Grievance Form," N.J.A.C. § 10A:1-4.5(c); (ii) the initial review and determination of the claim by a Coordinator on the correctional facility staff within 30 calendar days, *id.* at § 10A:1-4.5(d); (iii) the submission of the inmate's administrative appeal (in the event of an adverse initial determination) within ten calendar days of the Coordinator's determination, *id.* at § 10A:1-4.6(a)-(b); and (iv) the issuance of a final decision by the claims Administrator within ten business days of the receipt of the inmate's appeal, *id.* at § 10A:1-4.6(c)-(d). Plaintiff's grievances are alleged to have proceeded through the first step only — Plaintiff's filing of grievance complaints. *See* Romero T. 85:22-86:16. Having failed to exhaust his administrative remedies, Plaintiff contends that he was excused from doing so because those remedies were not actually "available" to him in his attempts to challenge Defendant's conduct. Plaintiff's Opp. Br. at 5.

The Supreme Court recently collected and clarified the law governing "availability" and recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief" — and therefore is not "available" to a plaintiff. *Ross*, 136 S. Ct. at 1859. When one or more of the three circumstances arise, plaintiff's duty to exhaust is excused. *Id.* ("an inmate's duty to exhaust 'available' remedies does not come into play."). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or

---

[5] "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself. . . . To complete the administrative review process . . . means substantial compliance with the prison's grievance procedures." *Small,* 728 F.3d at 272 (citations omitted).

13

consistently unwilling to provide any relief to aggrieved inmates." *Id.* (alterations in original). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Third and "finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

In this case, Plaintiff argues unavailability under a combination of the first and third circumstances. Plaintiff contends that he filed five grievance complaints over a twenty-month period concerning Defendant's deliberate indifference to the pain and suffering caused by his medical condition and, later, concerning Defendant's retaliation against Plaintiff for filing grievance complaints. Plaintiff alleges that he did not receive any decisions from the prison administration to his complaints, as would have been required by the IRF procedures. Plaintiff therefore claims that he either faced a "dead end," in which his complaints, although properly filed, were not addressed by prison officials, or his efforts were thwarted by prison administrators actively ignoring his complaints.

In support of his contentions, Plaintiff offers five purported photocopies of IRF grievance forms in which only the first part, setting forth Plaintiff's accusations, has been completed. June 28, 2016 Certification of Surinder K. Aggarwal, Esq., Exs. H-J. In the form dated January 6, 2012, as noted *supra*, Plaintiff complains that Defendant Ahsan was being "indifferent to [Plaintiff's] pain, suffering, and inability to comply with his requests [to walk]" in violation of Plaintiff's "constitutional rights." *Id.* at Ex. H. In the form dated January 14, 2012, Plaintiff complains that Defendant Ahsan was "trying to deny [Plaintiff] surgery because [Plaintiff] filed a remedy form against him on 1/6/12." *Id.* at Ex. I. In the form dated February 16, 2012, Plaintiff complains that

defendants Ahsan and Gehrman refused to provide Plaintiff with knee surgery in retaliation for the earlier complaints against Defendant Ahsan. *Id.* at Ex. J. In the form dated May 20, 2012, Plaintiff complains that he was prescribed a knee brace and knee surgery by a specialist in January, but was being denied surgery and experiencing delay in obtaining the brace due to Defendant's retaliatory acts. *Id.* Plaintiff also complains that his earlier grievance forms and letter had been ignored. *Id.* Finally, in the form dated September 24, 2013, Plaintiff complains that, although he was then receiving physical therapy and pain medication and had received his prescribed knee brace, the treatments were not adequately dealing with his pain. *Id.* Plaintiff again states his belief that knee surgery was being withheld by Defendant as punishment for his filing of grievance forms. *Id.* The remaining sections of all five forms, including the portion of each form in which NJSP's claim coordinator would confirm receipt and respond to the allegations therein, are blank.

Plaintiff also directs the Court to Plaintiff's sworn testimony in his deposition that he properly submitted the grievance forms by placing them into the designated drop box. Romero T. 86:9-10; 87:10-23. Plaintiff further testified that he did not recall receiving any responses to his grievance complaints. *Id.* at 85:22-86:2. NJSP's own records do not include any mention of the five grievance forms, and therefore, do not reflect that any responses to the five complaints were sent. Aggarwal Cert., Ex. L.

In response, Defendant relies upon the fact that NJSP's records do not reflect that Plaintiff ever filed any of the five grievance forms concerning Defendant's alleged conduct. NJSP's records do, however, show six grievance complaints filed by Plaintiff for other incidents, not involving Defendant, which were filed and adjudicated according to the established IRF procedure between May 2012 and May 2014. *Id.* (listing, among others, complaints against staff for being forced from a wheelchair, against the mailroom for mishandling legal material, against religious services

concerning Plaintiff's change of religion to "Kingism," and against the Prison administration for housing unit issues). Defendant argues that the presence of these records and the absence of any record of Plaintiff's five complaints concerning the subject matter of this action, coupled with Ms. Reed's affidavit concerning the diligent search of the recordkeeping system, demonstrate that the IRF system was "available" to Plaintiff. In other words, Defendant contends that the system was clearly available to Plaintiff because Plaintiff knew how to make use of the grievance procedures and in fact, successfully did make use of them on a number of other occasions during an overlapping period, but there is no record of him having done so for the grievances related to this case. Defendant contends that the absence of records establishing that Plaintiff filed a grievance shows that Plaintiff inexcusably failed to exhaust his administrative remedies.

Reviewing the record here, and considering the arguments of the parties, the Court finds that disputes of material fact remain on the issue of exhaustion, which prevent the entry of summary judgment at this time. As an initial matter, Plaintiff is correct in his position that an inmate, who did not receive responses to his or her grievance complaints, may not have the grievance process available to him/her for the purposes of PLRA exhaustion analysis. In *Small v. Camden Cty.*, 728 F.3d 265, 273 (3d Cir. 2013), the Third Circuit clearly held that where a prison's administrative grievance "procedures d[o] not contemplate an appeal from a non-decision," the grievance process is unavailable to the complaining inmate after the inmate "fail[s] to receive . . . a response to the grievances." Here, the IRF System does not provide for the appeal of non-decisions, only of adverse determinations by the claim coordinator. N.J.A.C. § 10A:1-4.6(a) ("An inmate may appeal *a response or finding received* after exhausting the second step of the Inmate Remedy System as indicated in N.J.A.C. 10A:1-4.5 above.") (emphasis added). *See also id.* at § 10A:1-4.5(d) ("Correctional facility staff shall review and respond to a complaint or grievance

presented by the inmate in an 'Inmate Grievance Form' within 30 calendar days unless the request is determined to be an urgent request or a request is determined to require further deliberation."). Accordingly, if this Court were to find that Plaintiff in fact filed the five grievances concerning Defendant's conduct, and that Plaintiff did not receive responses to those complaints, the Court could find that the IRF grievance process was not legally "available" to Plaintiff, excusing his failure to exhaust administrative remedies. However, the Court cannot make that determination on this record.

The Prison's official records in this case do not reflect that any of the five complaints referencing Defendant's conduct were ever received by Prison officials. Accordingly, for this Court to find that Plaintiff was excused from exhausting his administrative remedies, it must rely upon Plaintiff's statement alone that he submitted the grievance forms. Defendant in his motion clearly contest Plaintiff's account, asserting that in the absence of an official record, there is no substantiated evidence that Plaintiff ever submitted the grievance forms, Plaintiff's own account notwithstanding. In order to rule upon the availability question therefore, this Court must evaluate the credibility of Plaintiff's statement and must make findings of fact in that regard. The law is clear that, in the context of PLRA administrative exhaustion, the Court is permitted to make such factual determinations. *Small*, 728 F.3d at 271. The Court is not, however, positioned to make such determinations on the papers based on the current record.

**III.    Evidentiary Hearing**

For the reasons explained above, the Court denies summary judgment on Defendant's exhaustion defense, finding that there are issues of fact as to whether Plaintiff was excused from exhausting his administrative remedies by submitting his grievances with respect to this Eighth

Amendment and retaliation claims, and whether NJSP received those grievances and failed to act upon them.

Although the Court denies summary judgment, it hereby advises the parties that it intends to hold a hearing to resolve Defendant's exhaustion defense(s). The Court finds support for this procedure in *Small*, 728 F.3d at 271, where the Third Circuit, following other circuit courts to have considered the issue, definitively held "that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Id.* In *Small*, the defendants had moved for summary judgment, arguing among other things, that plaintiff failed to exhaust his administrative remedies before filing suit. *Id.* at 267. The district court denied the defendants' motion without prejudice and stated its intention to hold an evidentiary hearing on the issue of exhaustion before reaching any of the other asserted bases for summary judgment. *Id.* at 267-68. After holding a two-day evidentiary hearing, the court held that the plaintiff failed to exhaust all but one of his claims. *Id.* The case subsequently settled and the plaintiff appealed, arguing in part that he was entitled under the PLRA to have a jury decide the exhaustion issue. *Id.* at 269. The Third Circuit disagreed, recognizing that "[t]hose of our sister circuits to have considered the issue have held that a plaintiff in a lawsuit governed by the PLRA is not entitled to a jury trial on the issue of exhaustion." *Id.* at 270 (citations omitted). Before turning to the question of whether the district court's findings were clearly erroneous, the court squarely held that "the district court did not err in acting as the factfinder on the exhaustion issue."[6] *Id.* at 271 (reversing in part the district court's

---

[6] The Court recognizes that in lieu of holding a hearing to resolve the threshold exhaustion issues, other courts in this District have denied summary judgment without prejudice with respect to exhaustion and reached defendant's other summary judgment arguments. *See, e.g.*, *Jackson*, 877 F. Supp. at 179-80 (granting in part and denying in part defendants' motion for summary judgment). *Jackson*, however, was decided in 2012 and predates the Third Circuit's decision in *Small*, 728 F.3d at 271. In *Jackson*, the court subsequently granted defendants' motion for a bifurcated trial concerning their exhaustion defense, and, after holding a two-day trial, held that

18

finding that the plaintiff was required to appeal a non-decision in order to exhaust his administrative remedies).

Because there are issues of fact that preclude summary judgment here, the Court, noting the Third Circuit's apparent approval of such a procedure, will deny without prejudice Defendant's motion for summary judgment and conduct an evidentiary hearing to resolve the factual disputes regarding Plaintiff's exhaustion of his administrative remedies.[7]  Because a finding that Plaintiff failed to exhaust his administrative remedies with respect to some or all of his claims may moot the need to reach the other grounds for summary judgment raised by Defendant, the Court will defer ruling on Defendant's remaining arguments for summary judgment at this time.[8]  Should the Court determine after the hearing that Plaintiff exhausted his administrative remedies with respect to one or more of his claims for relief, the Court will reinstate Defendant's motion for summary judgment.

DATED:  December 22, 2016                                               /s/ Freda L. Wolfson
                                                                        Freda L. Wolfson
                                                                        United States District Judge

---

Plaintiff had exhausted all available administrative remedies.  *See Jackson v. Gandy*, No. CIV. 09-1141, 2014 WL 4827407, at *1-8 (D.N.J. Sept. 29, 2014).  In light of *Small*, the Court finds that an evidentiary hearing is more appropriate.

[7]     In addition to its apparent approval of the procedure used by the District Court, the Third Circuit cited approvingly to the Seventh Circuit's procedure for resolving exhaustion issues early in the litigation; that procedure instructs the District Court to hold a hearing prior to discovery or with limited discovery on the issue of exhaustion.  *Id.* at 271 n.5 (citing *Pavey*, 544 F.3d at 742).

[8]     Even if I were able and inclined to proceed to Defendant's merits arguments before resolving the administrative exhaustion question, I would necessarily reserve decision until after the exhaustion hearing, because Defendant's motion for judgment on the merits of Plaintiff's First Amendment claim is premised on the same disputed factual predicate — whether Plaintiff in fact submitted the five grievance forms and whether Defendant had notice of those grievances.